# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 10-CR-376 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| THOMAS ZAJAC | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on various pretrial motions filed by the parties concerning the Government's proposed use of "other acts" evidence pursuant to Federal Rule of Evidence 404(b). For the following reasons, the Government's motion to admit Rule 404(b) evidence [120] is granted in part and denied in part. The Government shall be allowed to introduce evidence concerning the Salt Lake City bombing for which Defendant was convicted in the District of Utah, subject to any future rulings by the Court limiting the use of particular pieces of Rule 404(b) evidence, including but not limited to rulings on *Daubert*-based motions and motions alleging spoliation.[1] However, the Government shall not be allowed to introduce as evidence the fact that Defendant was convicted of the Salt Lake City bombing. Defendant's motion for notice of Rule 404(b) evidence and timely production thereof [114] and motion "for a decision by the court, whether 404(b) Utah case evidence may be used by the government and notice of withdrawal from the position the court stay a decision to admit 404(b) Utah evidence into coming trial" [426] are granted. At the next status hearing, the Court will set a schedule for the production of the Rule 404(b) evidence that the Government intends to introduce at trial but has not already produced. Defendant's motion for extension of time to respond to the Government's Rule 404(b) motion [227] is denied as moot. The Government is directed to file a status report by May 20, 2019

---

[1] Such motions include, among others, docket entries [217], [221], [286], [306], and [320].

concerning whether it has produced and/or has objections to producing the evidence requested by Defendant in docket entries [261] ("motion to compel government to provide defense expert with evidence from the instant and 404(b) case") and [299] ("renewed request for order that 404(b) case evidence be provided to defendant's trace expert"). This case remains set for status hearing on May 17, 2019, with time excluded without objection from the last status date of April 25, 2019 through the next status date in the interests of justice, the complexity of the case, the ongoing expert work, and the need to prepare for trial.

I.  **Background**

On May 6, 2010, a grand jury returned an indictment against Defendant charging him with damaging property of the Hinsdale Metra Station in Hinsdale, Illinois by means of an explosive, in violation of 18 U.S.C. § 844(i) (Count 1); using a destructive device during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(B)(ii) (Count 2); and possession of a destructive device that was not registered, in violation of 26 U.S.C. § 5861(d) (Count 3).

According to the Government, the indictment is based on the following facts. On April 21, 2005, an officer of the Hinsdale Police Department arrested Defendant's son on a warrant issued from DuPage County. Defendant and his wife went to the Hinsdale police station following the arrest. Defendant behaved in an agitated and violent manner at the police station.

On September 1, 2006, an explosive device that had been placed in a trash container at the Metra train station in Hinsdale exploded (the "Hinsdale Device"). No one was seriously injured, but train service was delayed for a period of time. According to the Government, the explosive device was a pipe bomb made from a PVC pipe sealed with PVC end caps that contained Alliant Blue Dot smokeless powder. The device had a time delay that was executed with a Lux Minute

Minder 60-minute timer with wire lead affixed with sealant near the 59-minute mark. The device was ignited using a model rocket igniter that was on a direct current electrical circuit that was powered by one 9-volt alkaline battery with silicone sealant on the base of the battery. The circuit was wired using 22 American Wire Gauge black insulated copper wiring. The device was mounted to a flat piece of cardboard using silicone.

A few weeks after the explosion, on October 12, 2006, the Hinsdale Police Department received a threat letter (the "Hinsdale Letter"). The Hinsdale Letter stated:

> Not too long ago you fucked with the wrong person. This will likely eventually lead to the death of at least one Hinsdale citizen. It's up to you. In fairness, I fired a warning shot last month. Let's see if you're bright enough, or possess the character needed to stop this death. I don't believe you do, but my conscience will be clear. Here's the process: A couple of your goons used their positions as officers to intimidate and harass a non-threatening person in need of their help. As far as they knew, the person's life was in danger. Instead of helping they did what they could to cause as much pain as possible. Now it's my turn. I'll be watching and listening to news of the police department. I won't go out of my way, but if I hear of foul play by your men someone is dead.

[120-2] at 1-2. The Hinsdale Letter also correctly described aspects of the construction of the Hinsdale Device that had not been made known to the public. For example, the letter correctly noted that the device had used a rocket engine and a fuse and that the device had been in a small plastic container. The letter also stated that the police had been "embarrassed and humiliated by the first experience" and emphasized that "[t]he next one will repeat that, many times over," and impose "ongoing costs" on Hinsdale, forcing the village "to install cameras in public places." *Id*. at 2.

The Hinsdale Letter was subsequently tested for fingerprints. According to the Government, seven fingerprints matched to Defendant were found on the envelope. One additional fingerprint matched to Defendant was found on the back of the adhesive label.

3

In addition to facing charges for the Hinsdale bombing, Defendant was also charged in the District of Utah with bombing a library in Salt Lake City, Utah on September 15, 2006—two weeks after the Hinsdale bombing. According to the Government, the charges in the Utah case were based on the following facts.

Prior to the Salt Lake City bombing, in April 2004, Defendant's son was cited by Salt Lake City Police for driving under the influence ("DUI"). According to the son, he told Defendant about the DUI later after the charges had been reduced to reckless driving. Defendant traveled to Salt Lake City from Illinois on September 14-15, 2006. On September 15, 2006, an explosive device was placed in the main library in Salt Lake City and detonated (the "Utah Device"). There were no injuries, but the explosion caused damage to the library's exterior windows. Defendant's fingerprint was subsequently recovered on a remnant of the packaging for a packet of three Estes brand model rocket motors that was found among the bomb debris.

According to the Government, the Utah Device was a pipe bomb constructed from a black steel pipe with galvanized iron end caps and filled with Alliant Blue Dot smokeless powder. The device had a time delay that was executed with a Sunbeam 60-minute timer, which had been modified with a wire lead affixed with sealant near the 59-minute mark. The device was ignited by a model rocket igniter that was on a direct electrical circuit powered by one nine-volt alkaline battery with silicone sealant on the base of the battery. The electrical circuit was wired with 22 American Wire Gauge black insulated copper wiring. The device was also mounted to a flat piece of cardboard with silicone.

About two weeks after the explosion, the Salt Lake City Police Department received a threating letter (the "Salt Lake City Letter") describing the library bombing. The letter was postmarked October 23, 2006 from Omaha, Nebraska. Telephone, hotel and credit card records,

along with witness interviews, established that Defendant was in Omaha during the weekend of October 20 to 22, 2006, visiting his daughter at school. The Salt Lake City Letter stated:

> Well chief, since you assholes aren't here by now I'd say you aren't coming. I fired a shot over your bow, as a punishment and a stem warning about how your men are to conduct themselves in the future . . . . When you fucked with mine you picked the wrong person. To gain recognition within your department and community you strong-armed a helpless person. Had it been me I would have shot your officers dead. . . . The next bomb will far larger, and will be designed to kill. It will be placed in a public place again, but in a crowd this time. If at least one person isn't killed I will simply go again. It's up to you asshole . . . . You were humiliated and insulted at not preventing the attack, and by not solving it. Your punishment will be this same situation again, times 10. And you will be forced to upgrade security in the city.

[120] at 6. The Salt Lake City Letter also accurately referenced some of the components of the destructive device used in the Salt Lake City bombing. The end of the letter states, "[m]echanical (food) timer to ignition pin to flair, to fuse of a double-cap pipe bomb, Yep, it was I!" Those details about the components of the bomb had not yet been released to the media.

In 2010, a jury in the District of Utah convicted Defendant of all charges. Defendant was sentenced to 35 years imprisonment. During the trial, the Government introduced under Federal Rule of Evidence 404(b) evidence concerning Defendant's alleged bombing of the Hinsdale Metra Station. Defendant challenged the use of certain Rule 404(b) evidence prior to trial during *Daubert* hearings, as well as after trial in post-trial motions, a direct appeal, and post-conviction habeas proceedings. Defendant lost his direct appeal and his petition for habeas relief was denied. Ultimately, the Tenth Circuit denied Defendant's habeas petition and concluded that it had "no issues with admission of the Rule 404(b) evidence" used at Defendant's trial. See *United States v. Zajac*, 680 Fed. Appx. 776, 784 (10th Cir. 2017).

## II. Legal Standard

In this case, the Government seeks to introduce Defendant's conviction for the Salt Lake City bombing and certain underlying evidence from that case pursuant to Rule 404(b). Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1), (2). When the defendant requests, the prosecutor must "provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial" and "do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice." Fed. R. Evid. 404(b)(2).

When a defendant objects to the use of "other acts" evidence, the proponent must establish as an initial matter "that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way." *United States v. Gomez*, 763 F.3d 845, 860 (7th Cir. 2014). Although "[o]ther-act evidence need not be excluded whenever a propensity inference can be drawn," its "relevance to 'another purpose' must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case." *Id*. (quoting Fed. R. Evid. 404(b)(2)).

"[O]ne permissible purpose for the introduction of other-act evidence is to prove a defendant's identity through a 'distinctive manner of operation, or modus operandi.'" *Gomez*, 763 at 854 (quoting *United States v. Simpson*, 479 F.3d 492, 497–98 (7th Cir. 2007), *abrogated in part on other grounds by United States v. Boone*, 628 F.3d 927, 933 (7th Cir. 2010)); see also, e.g.,

*United States v. Carson*, 870 F.3d 584, 599 (7th Cir. 2017) ("we permit modus operandi evidence to demonstrate the identity of the defendant"); *United States v. McGuire*, 627 F.3d 622, 626-27 (7th Cir. 2010); *United States v. Price*, 516 F.3d 597, 604 (7th Cir. 2008); *United States v. Smith*, 103 F.3d 600, 603 (7th Cir. 1996). "[P]rior-act evidence can be admissible to show modus operandi if that evidence 'bears a singular strong resemblance to the pattern of the offense charged, with the similarities between the two sufficiently idiosyncratic to permit an inference of pattern.'" *Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 918 (N.D. Ill. 2013) (quoting *Simpson*, 479 F.3d at 498). For example, "the fact that a defendant committed a prior bank robbery while wearing a clown mask indicates that the defendant may have been the person who recently robbed a bank while wearing a clown mask." *United States v. Paredes*, 87 F.3d 921, 925 (7th Cir. 1996).

If the proponent of "other acts" evidence makes a sufficient showing of relevance, then the Court must "assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great." *Gomez*, 763 F.3d at 860; see also *United States v. Urena*, 844 F.3d 681, 684 (7th Cir. 2016). The probative value of Rule 404(b) evidence increases based on "the degree to which the non-propensity issue actually is disputed." *Gomez*, 763 F.3d at 857. The balance also tips toward admission where "the similarities between" the charged act and the "other acts" are "substantial." *Price*, 516 F.3d at 604.

## III. Analysis

The Government seeks to introduce under Rule 404(b) Defendant's conviction for the Salt Lake City bombing and certain underlying evidence from that case. The Government contends that this evidence is being offered for a relevant, non-propensity purpose: to prove Defendant's identity by demonstrating his modus operandi in allegedly conducting the two bombings.

7

According to the Government, "[t]he very unusual nature of this crime, the very similar construction of the explosive devices, the consistent pattern of law enforcement contact followed by use of explosive device followed by a threatening letter, and the eerily similar content, tone and style of the letters all combine to establish a singularly strong resemblance that constitutes highly probative modus operandi evidence." [120] at 7. More specifically, the Government contends that the following alleged commonalities make these crimes "mirror images of each other: 1) the unique nature of a bombing in a public location; 2) an explosive device was used after municipal law enforcement arrested defendant's son; 3) placement of the explosive device in a public facility in the community where his son was arrested; 4) numerous similarities in the construction of the two devices, including the fact that both were pipe bombs using Alliant blue dot powder, egg timers with similar period of delay and wiring for delay, the device was glued to a cardboard base with silicone, use of similar copper wire and a 9 volt alkaline battery; 5) threat letters mailed within two weeks of each other; 6) threat letters mailed after device exploded; 7) letters threatening a future bombing; 8) letters addressed to the chief of police in the community where his son was arrested; 9) letters mailed from a location where defendant lived or visited; and 10) extraordinary similarities of language contained in the threat letters …, including precise rationale given for the bombing and a threat that a second bombing will occur if the author perceives future police misconduct." [120] at 11; see also [120-1] (Gov. Ex. A, chart comparing evidence concerning Hinsdale and Salt Lake City bombings).

After reviewing the parties' arguments and the evidence supporting the two bombings, the Court concludes that evidence concerning the Utah bombing, Utah Device, and Utah Letter are relevant to Defendant's modus operandi and, in turn, to establishing Defendant's identity. The two bombings occurred in close temporal proximity, only two weeks apart. The alleged triggering

event in both cases was Defendant's son's arrest by local police in the prior two years. Both explosions occurred in public locations in the communities where Defendant's son was previously arrested. Both were carried out using pipe bombs containing smokeless power, a 60-minute timer, a model rocket igniter, a 9-volt alkaline battery, black insulated copper wiring, and a cardboard backing. And both were followed up within the next two weeks with threatening letters to the local chiefs of police. The letters themselves had extremely similar themes and used similar language. Both claimed that the local police wrongly targeted a "non-threatening" or "helpless" person. Both warned that the author would be watching the local media for news of similar mistreatment and, if any was reported, would plant much larger bombs in public places, resulting in deaths. Both referred to non-publicly known details of the two bombings, to the police being humiliated by their failure to solve the crimes, and to future bombings forcing the communities to improve their security.

These similarities, taken as a whole, are sufficiently idiosyncratic to permit an inference that the same person carried out both bombings. In fact, the similarities are even stronger in this case than in other cases in which the Seventh Circuit has affirmed district courts' admission of modus operandi evidence under Rule 404(b). Compare, *e.g.*, *United States v. Brewer*, 815 F.3d 408, 415-16 (7th Cir. 2019) (in trial for bank robbery in Indiana, evidence of defendant's involvement in Ohio and California bank robberies was admissible modus operandi evidence, where evidence showed that all three banks were robbed by person who dressed similarly and used similar, though not identical, methods involving a stick and a "give-me-the-cash note"); *McGuire*, 627 F.3d at 623, 626-27 (in prosecution for travel in interstate commerce for the purpose of having sex with a minor, testimony of adult witnesses concerning the details of their childhood sexual assault by defendant and defendant's threats that no one would believe them if they reported him

9

was admissible evidence of defendant's modus operandi); *Price*, 516 F.3d at 603-04 (details of later bank robbery to which defendant pled guilty were sufficiently similar to earlier, charged robbery to be admitted as modus operandi evidence where in both cases an employee opening the bank was ambushed on an early weekday morning, the employee was ordered at gunpoint to turn off the alarm, access the vault, and hit the ground, the banks were located 5.4 miles apart, and the crimes took place within five months of each other); *Smith*, 103 F.3d at 603 (defendant's previous robbery of another bank was sufficiently similar to charged robbery to be admissible as modus operandi evidence where both robberies were committed by young white males with slender builds within one month and forty miles of one another and both robbers had drivers, used knives, took money from behind the bank counters rather than demanding money from tellers, and targeted small rural banks).

The Court next must assess whether the probative value of the evidence concerning the Salt Lake City bombing is substantially outweighed by the risk that Defendant would be unduly prejudiced if the evidence is admitted. *Gomez*, 763 F.3d at 860; *Urena*, 844 F.3d at 684. The probative value of the evidence to establishing Defendant's identity is high because Defendant denies that he committed the Hinsdale bombing; there are no known witnesses to Defendant allegedly placing the pipe bomb at the Hinsdale Metra station; and, therefore, Defendant's identity as the perpetrator must be proven entirely by circumstantial evidence. The similarity of the two bombings also increases the probity of the evidence and decreases the potential risk of unfair prejudice. See *United States v. Anifowoshe*, 307 F.3d 643, 647 (7th Cir. 2002) ("when other acts bear a striking similarity to the acts with which the defendant has been charged, this court has noted that the similarity 'increases the probity of that evidence and actually decreases the potential risk of unfair prejudice'") (quoting *Paredes*, 87 F.3d at 925). As the Government explains: "The

10

bizarre letters coupled with the very particular construction of these devices provides a strong inference that the same person committed both crimes. The comparison of these events does not lead to the inference that [Defendant] has a character for dropping bombs and writing threatening letters; it leads to the inference that one person must be behind both events. Far from unfair prejudice, this is a fair inference for the jury to use in assessing the evidence of the Hinsdale bombing." [120] at 14.

Further, the Court will minimize the risk of prejudice by—as the Government proposes—providing a proper limiting instruction informing the jury that evidence of the Salt Lake City bombing is being introduced to establish single authorship of the two devices and threat letters and should not be used to "draw any conclusions about the defendant's character or infer that on a particular occasion the defendant acted in accordance with a character trait." *Gomez*, 763 F.3d at 860-61. The jurors will also be "reminded that the government's duty is to prove beyond a reasonable doubt every element of the specific crime charged, and it cannot discharge its burden by inviting an inference that the defendant is a person whose past acts suggest a willingness or propensity to commit crimes." *Id*. at 861.

Defendant does not contest that the evidence concerning the Utah bombing, Utah Device, and Utah Letter are relevant "other acts" evidence under Rule 404(b). Nor does Defendant argue that the probative value of the evidence is substantially outweighed by the risk of undue prejudice. Instead, Defendant opposes only the admission of the Utah conviction itself, on the basis that "knowledge by the jury of a conviction does not assist the purpose for the intended use of 404(b) evidence." [236] at 2. The Court agrees with Defendant on this point. The fact of Defendant's prior conviction is not itself idiosyncratic and would not support an inference that the Salt Lake City and Hinsdale bombings were carried out by the same person. Instead, the fact of the

conviction would simply suggest that Defendant has a "propensity to commit the crimes charged, as prohibited by Fed. R. Evid. 404(b)." *United States v. Perkins*, 548 F.3d 510, 513 (7th Cir. 2008). For the same reasons, Defendant's Utah conviction lacks probative value and is more easily outweighed by the risk of undue prejudice—*i.e.*, that a jury may conclude that Defendant must have committed the Hinsdale bombing based not on the evidence, but on the fact that another jury already found Defendant guilty of the Utah bombing.

Therefore, the Court will preclude the Government from informing the jury that Defendant was convicted by a jury of the same charges he faces in this case. See, e.g., *Brewer*, 815 F.3d at 416 (in appeal of conviction for bank robbery, affirming district court's admission of modus operandi evidence of defendant's two earlier robberies where district court provided proper limiting instruction and "excluded evidence of [defendant's] conviction for" one of the earlier robberies); *United States v. Malik*, 800 F.2d 143, 147 (7th Cir. 1986) (evidence of narcotics defendant's prior method of importing heroin was admissible in trial on subsequent importation charge, where methods of importation were almost identical and evidence was limited to prior acts and did not include prior conviction).

## IV.  Conclusion

For these reasons, the Government's motion to admit Rule 404(b) evidence [120] is granted in part and denied in part. The Government shall be allowed to introduce evidence concerning the Salt Lake City bombing (subject to any future rulings by the Court limiting the use of particular pieces of Rule 404(b) evidence), but shall not be allowed to introduce Defendant's conviction for the bombing. Defendant's motion for notice of Rule 404(b) evidence and timely production thereof [114] and motion "for a decision by the court, whether 404(b) Utah case evidence may be used by the government and notice of withdrawal from the position the court stay a decision to

12

admit 404(b) Utah evidence into coming trial" [426] are granted. At the next status hearing, the Court will set a schedule for the production of the Rule 404(b) evidence that the Government intends to introduce at trial but has not already produced. Defendant's motion for extension of time to respond to the Government's Rule 404(b) motion [227] is denied as moot. The Government is directed to file a status report by May 20, 2019 concerning whether it has produced and/or has objections to producing the evidence requested by Defendant in docket entries [261] ("motion to compel government to provide defense expert with evidence from the instant and 404(b) case") and [299] ("renewed request for order that 404(b) case evidence be provided to defendant's trace expert").

Dated: May 8, 2019

_____
Robert M. Dow, Jr.
United States District Judge